[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by virtue of summons and complaint, which complaint was dated April 20, 1999 and returnable May 18, 1999, in which complaint the plaintiff petitioner Barbara A. Konow sought a dissolution of the marriage, custody of the minor child, support for the minor child, an equitable property settlement, and such other relief as in law or equity may provide.
The usual summary of automatic court orders accompanied the complaint as well as a motion for custody and support pendente lite, a motion for allocation of credit card debt pendente lite, a motion for exclusive use and possession of the family residence pendente lite.
The defendant appeared by counsel by virtue of an appearance filed on May 6, 1999.
Along with his appearance, counsel for the defendant filed a motion CT Page 4745 to sell family residence pendente lite, a request for mandatory disclosures and production, a motion for an appraisal pendente lite, a motion for alimony in favor of the defendant and against the plaintiff, joint custody and visitation and an allocation of debts pendente lite.
On the same date, April 29, 1999, the defendant, by counsel, filed an answer to the complaint and a cross complaint, and in the cross complaint claimed a dissolution of the marriage, alimony, joint custody of the minor child, reasonable rights of visitation with the minor child, an assignment of the jointly owned real estate located at 45 Baltic Road, Franklin pursuant to § 46b-81 of the Connecticut General Statutes, an allocation of debts and such other relief as the court deems fair and equitable.
On June 7, 1999 mindful of the filing of the motions pendente lite earlier referred to, an agreement was undertaken by the plaintiff and the defendant with the assistance of counsel which in the main provided for joint temporary custody of the minor child, the plaintiff petitioner mother to be the primary custodial parent pendente lite, reasonable rights of visitation as specifically spelled out, an order of $100.00 per week as child support and other relevant provisions. The agreement also provided for the real estate at 45 Baltic Road to be appraised and an order directing the defendant to pay a modest amount on certain credit card debt.
On June 7, 1999 both the plaintiff and the defendant had filed detailed financial affidavits.
On October 4, 1999 plaintiff's counsel filed a request to amend complaint dated September 30, 1999 and the amendment to the complaint which added a second count thereto setting forth an additional ground on which relief was prayed for incident to the petition for dissolution of the marriage.
The plaintiff and the defendant with their respective attorneys and witnesses appeared before the court on April 12, 2000 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff's maiden name was Barbara A. Konow and the plaintiff has retained that name notwithstanding her marriage to the present time.
The plaintiff and the defendant were united in marriage in the town CT Page 4746 of Franklin on July 29, 1978.
The testimony establishes the requisite residency requirement of the parties for more than one year.
It appears clearly from the testimony as hereinafter set forth that the marriage has irretrievably broken down with no reasonable prospect for reconciliation.
The plaintiff and the defendant have one minor child issue of this marriage whose name is Meghan K. Ward born February 18, 1983. No other children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither party during the marriage has been the recipient of any aid or assistance from the State of Connecticut or any town, city or municipality or subdivision thereof.
The plaintiff who is age 46 indicated in her testimony that she felt that her health was in her words "not great", that she is affected particularly since the initiation of the petition for dissolution with depression, has sleepless nights, some gynecological problems perhaps due to the onset of menopause.
The plaintiff testified that she presently finds it difficult to concentrate on matters pertaining to her duties and employment. The plaintiff is on a prescription medication known as Cirazone. The plaintiff's inability to concentrate apparently because of emotional upset has affected her work. The plaintiff testified that on occasion she finds it difficult to get out of bed, particularly since discovering the defendant's relationship with a friend.
The plaintiff testified that she did not experience emotional problems prior to the disclosure of the present relationship by her husband. Apparently her anxiety over matters in general has deteriorated and that was the reason for going on the medication. The plaintiff testified that after learning of the defendant's indiscretion that she had lost 30 pounds and that she felt betrayed.
The plaintiff, during the marriage, materially assisted the defendant in his wish and inclination to return to school for higher education and supported him in that regard for a period of many years.
The daughter of the parties, Meghan, has just turned age 17. She is a junior in high school and it is the hope, apparently of both of CT Page 4747 the parents, that the child will be able to attend college.
The defendant has a bachelor of arts degree and holds a teaching certificate.
The testimony indicated that the daughter Meghan is bitter and angry as concerns the breakup of the marital union between her parents and that her grades have suffered and that the child allegedly threatened to do away with herself. It appears that on some occasions that the minor daughter acted as a babysitter for the defendant and children of the defendant's friend.
The plaintiff and the defendant first met while the plaintiff was attending college at Southern Connecticut State University and the parties initially resided in the town of New Haven.
The plaintiff's educational degree is a bachelor's degree in social work. The plaintiff has held a variety of positions prior to her present post. She has been a group home counselor, worked at the Hamden Friendship Home, was a respondent's advocate.
In 1980 the plaintiff and the defendant bought the home that they now have.
The plaintiff has held the position that she has now with the State both on a full-time and part-time basis for about 20 years and is at the top of her income status insofar as her earnings are concerned.
The plaintiff's position is that of a human services advocate.
The minor child is presently covered for medical and dental matters under the plaintiff's health insurance.
The plaintiff at one point in her life had hoped or aspired to attend law school but apparently economic constraints precluded that.
The defendant has held a variety of positions prior to his present post as a teacher in the town of Voluntown. He worked as a laborer, he worked with a narcotics group in the City of Bridgeport, he has been a counselor. The defendant worked for a considerable time with his parent father in doing autobody work.
At one point in time the defendant had an unincorporated business. The defendant has skills in car restoration, is skillful in matters of carpentry. It was represented that, at least in the past, CT Page 4748 the defendant has done some jobs outside of his regular employment for which he has received cash payments.
During the course of the marriage the plaintiff did the defendant's books and accounting as was necessary or required.
The plaintiff felt during the marriage until the disclosure in 1998 that the parties had a true partnership.
In 1983 the defendant indicated an inclination to go back to school and to become involved in teaching. The plaintiff feels that she has sacrificed further education including law school to enable the defendant to further his career and secure the educational attainment that he presently holds.
It was the plaintiff's hope during the marriage that once the defendant had secured a college degree that she would thereafter be able to resume further education, but under the present circumstances that does not appear feasible.
The defendant presently has a teaching certificate pursuant to which he may participate in teaching activities over a wide-range from kindergarten through high school.
The defendant has become proficient in certain fields of technology including matters pertaining to computers.
The defendant works as a technology coordinator, not as a class room teacher.
The plaintiff feels that at this juncture the defendant has materially greater prospects than what are presently available to her.
At one point in time after initially acquiring their home at 45 Baltic Road in the town of Franklin, the indebtedness on the home was refinanced to the amount of $10,000.00; the monies being used to assist in the furtherance of the defendant's education.
The plaintiff testified that she did not realize that there were any problems in the marriage until the disclosure as to the defendant's relationship with a friend.
While the marriage was not perfect and there may have been infrequent arguments, there were no apparent problems with regard to anything pertaining to physical violence or substance abuse. CT Page 4749
In 1998 the plaintiff became aware that the defendant's attitude was rather distant and short or abrupt. The defendant would in her words "push her away" if she made a suggestion of warmth or intimacy. The plaintiff felt rejected by the defendant insofar as matters of physical intimacy.
At one point the plaintiff made the suggestion that the parties engage in counseling. The plaintiff being concerned as to the possible deterioration of the union on inquiry of the defendant apparently accepted his representations that everything was all right through the Spring of 1998.
In September of 1998 the plaintiff overheard a conversation between the defendant and a friend. The friend was known to the plaintiff and the plaintiff confronted the defendant with the knowledge acquired from the computer or phone conversation and the defendant at that juncture acknowledged an indiscretion. The plaintiff testified that she felt shocked, was physically sick and at the time talked with the defendant all night in trying to determine the extent of the problems.
During 1998 the parties took a trip to Florida; however, the testimony was to the effect that the defendant maintained a continual computer contact with his friend here.
The plaintiff and the defendant in the Summer of 1998 celebrated their 20th anniversary and apparently the plaintiff at that juncture was not fully aware of the relationship between the defendant and his friend.
When becoming fully apprised as to the relationship, the plaintiff felt humihated, took time off from her job, and tried to engage in family activities to save the union and pull the marriage together.
The plaintiff testified that she was under further stress with regard to the lengthy travel time required each day from her home to her position with the State and the stressful nature of her work and long days.
At one point the defendant apparently promised the plaintiff that he would break off the relationship and a marriage counselor was resorted to, but apparently that effort was not successful.
The defendant acknowledged in due course an intimate relationship with a friend of his who was also apparently a friend or at least CT Page 4750 known to the plaintiff.
The upset of the plaintiff was to the extent that she went and was tested for HIV and she felt humiliated to have to follow that course.
The defendant's friend is an individual engaged in educational matters similar to that of the defendant.
On the plaintiff's birthday, January 29th 1999, the defendant told the plaintiff that he no longer had affection for her. The defendant secured an apartment and the plaintiff placed his belongings in the garage of the marital residence.
Apparently the marital problems between the plaintiff and the defendant have also affected the conduct of their daughter Meghan and the daughter's situation was described as the child now having a bad attitude, was physically or emotionally sick a considerable amount of the time, and that the minor daughter at one juncture talked about running away from the home; however, the parties apparently were able to sufficiently counsel the daughter so as to defuse that situation.
When the plaintiff and the defendant purchased the home that they have on Baltic Road in Franklin, the purchase price for which was $43,500.00, the plaintiff's parents assisted the parties by making available to them $25,000.00 in cash to facilitate the purchase interest free.
There is still due and owing to the plaintiff's parents the sum of $7,100.00; approximately $18,000.00 having been paid back in small amounts periodically over the years.
One of the loans reflected on the financial affidavit of the parties, the CHIF loan, was associated with the installation of a new furnace on the premises.
The plaintiff testified that the home needs a number of improvements or items of replacement including a new water pump estimated at $800 to $900. The oil tank needs to be replaced and put in the home at a cost of $1,200.00. The garage roof needs replacement and the roof on the main residence apparently was improperly installed. Some window replacements are required.
The plaintiff testified that she wishes to keep and retain the pension that she has accumulated over the years as will hereinafter be more particularly identified and has made no claim against the CT Page 4751 admittedly modest pension benefits which the defendant holds.
The plaintiff acknowledged that during a major portion of the marital union that the relationship between the parties was good and that the defendant was in her words "a good husband".
The defendant, in addition to his present teaching position, does some coaching at the school or in the system in which he is involved and on occasion the daughter has been in one or more of those classes.
Some additional income may be derived from coaching, auto body work or carpentry performed during the summer vacation schedule by the defendant.
The plaintiff described some of her gynecological problems, which it is not necessary to treat with particularity.
Matters of physical intimacy between the plaintiff and the defendant were infrequent and sporadic.
Initially the daughter of the parties was not desirous of having further contacts with the defendant but that situation seems to have improved somewhat as time went by.
In the $45,000.00± mortgage figure shown on the financial affidavits is included a $9,000.00 item that was used for the purpose of financing and/or purchasing the motor vehicle which the plaintiff presently operates and has in her possession.
During the course of the marriage both of the parties did household chores, cooking and cleaning, and general maintenance of the property.
The plaintiff testified with regard to some problems that the defendant had with regard to matters of intimacy which do not need to be dwelt on. The plaintiff apparently was patient and endeavored to help and assist but apparently to no avail. It is the plaintiff's posture that the defendant in her words "broke the marriage contract".
The defendant's friend was called as a witness and testified at some length but the Court sees no useful purpose served in detailing the nature of the testimony. Suffice it to say that it contributed to the breakdown. of the marriage.
The defendant's friend was a married person with children, considerably his junior. CT Page 4752
In the testimony of the defendant, he indicated and verified that the parties had met while the plaintiff was at college. He detailed the nature of his employment history over the years including his work with his parent father. The defendant was of a mind that problems in the marriage developed about eight years ago, the parties drifted apart, in his words "the spark went out of the marriage", matters of intimacy expired, and the defendant acknowledged one of the contributing factors thereto.
The defendant testified and it appears that the relationship with the friend has terminated and is no longer a viable matter.
The defendant has maintained a steady and regular visitation schedule with the daughter. The Court is inclined to the view that both of the parties have an abiding love and affection for the daughter and are endeavoring to be particularly helpful of the child's vulnerability and to try to do what is in the child's best interest.
The defendant testified that he regretted the relationship that he had entered into with the friend and appeared sincere.
The defendant acknowledged that the plaintiff was a patient, hard worker and that he received some compensation other than from his regular teaching position as a soccer coach. The defendant now is a tenured teacher. The defendant is a self-taught carpenter and has skills acquired over a 13-year relationship with his parent father doing body work on automobile restorations.
Both of the parties appear sincere with regard to trying to do the best that they can to further their daughter's future education and putting her interest at the forefront of their concerns.
The defendant husband is age 47 and as best the Court can devine is in reasonably good health.
From the financial affidavits of the parties, the Court finds as to the plaintiff she is an employee of the State of Connecticut, Department of OPA, as a human services advocate, employed at the office on Westin Street in Hartford. Her gross weekly wage is $959.00, deductions for taxes, retirement and health insurance making a net of $649.00. She receives an additional $5.00 for longevity pay. Her weekly expenses as shown on her affidavit amount to $892.00 and she is making payments on a variety of debts both joint and sole totaling about $107.00 a week. CT Page 4753
The plaintiff values the home at 45 Baltic Road in Franklin at $113,000.00 with a mortgage of $45,000.00 for a total equity of $68,000.00.
The plaintiff has a 1996 Toyota Camry automobile valued at $4,000.00 free and clear.
Her husband, the defendant, has two vehicles, a 1970 Volkswagen valued at $5,000.00 and a Saab automobile valued at $6,000.00.
The plaintiff shows a New York Life Insurance policy with a cash value of $5,150.00.
On the basis of another exhibit, the plaintiff's vested State of Connecticut pension plan would pay her $710.00 a month at such time as it would result in payout status.
The plaintiff discloses debts either sole or joint as follows: Visa, a joint debt balance $2,195.00, Citibank, a joint debt, $3,357.00, AAA, a joint debt, $1,203.00, CSECU, a joint debt, $1,632.00, MBNA, the defendant's debt, $848.00, Macy's, Filene's, the plaintiff's sole obligation, $400.00, Fleet Bank, the plaintiff's obligation, $3,399.00. a CHIF loan, which is joint, $3,000.00, and the balance of the loan to her parents which is joint, $7,100.00, for total of $23,134.00.
The defendant's financial affidavit reflects that he is employed as a teacher for the Voluntown Board of Education, gross weekly wage, $700.00, deductions for taxes, life insurance resulting in a net of $502.00, weekly expenses shown as $589.80, a debt shown apparently for a computer, $2,300.00.
The defendant values the 45 Baltic Road, Franklin property at $113,500.00, indicates a mortgage of $38,000.00, for his share of the equity of $37,775.00.
The defendant values the 1970 Volkswagen Beetle at $2,000.00 and shows an outstanding insurance policy available by virtue of his employment from the Board of Education in the face amount of $40,000.00, no cash value.
A Traveler's retirement account valued at $9,000.00 and a State of Connecticut Teacher's Retirement Board fund valued at $8,049.67.
See Plaintiff's Exhibit 5 for a verification as to the Traveler's Life and Annuity account summary indicating a value of $9,699.14. CT Page 4754
See Plaintiff's Exhibit 10, the note in the amount of $25,000.00 dated February 1, 1980, verifying the $25,000.00 made available from the plaintiff's parents to the plaintiff and defendant incident to their purchase of the Baltic Road property in Franklin.
With regard to the defendant's Traveler's Life and Annuity account, see also Plaintiff's Exhibit 11 indicating that its current value as of March 31, 2000 is $9,922.83.
Plaintiff's Exhibit 4 is a detailed, lengthy summary appraisal of real property done by the Reese Appraisal Company as concerns premises located at 45 Baltic Road in the town of Franklin. The exhibit establishes that the appraiser has valued the property at $113,500.00.
The premises consists of a modest home with a two-car garage. There is apparently considerable additional land besides that on which the residence is established. The total area of the property is apparently in the neighborhood of ten acres. The property according to the exhibit is in need of various attention insofar as keeping up and maintaining the property. A portion of the property apparently in any event mindful of the acreage would not be subject to the possibility of development because of a watercourse that runs through the property and a portion of the same being considered as wetlands.
The exhibit established comparables that the appraiser used in arriving at the value established.
 Discussion
This is a marriage of 21-1/2 years.
One minor child issue of the marriage now age 17 and in high school.
Both the plaintiff and the defendant have worked hard to secure the educational degrees that they have and until the relatively recent past, at least insofar as the plaintiff was concerned, the marriage was a stable one.
It apparently has come as some considerable shock and dismay to the plaintiff to have become aware of the defendant's friendship with an acquaintance of both of the parties.
It would appear based on the Court's observations that the revelation of the relationship has had a marked effect on the CT Page 4755 plaintiff emotionally.
While the marriage may not have been perfect, very few are, there were no insurmountable hurdles that came along or existed until the defendant undertook the relationship with the friend, who was considerably his junior.
While there may have been an occasional argument between the parties, there were no major precipitating factors to cause the dissolution. It may well be that there was a lack of physical intimacy that continued to grow between the parties. Apparently this was a problem that was not successfully addressed.
At this point there apparently has been a marked effect on the 17-year old daughter by virtue of what has occurred as to her parents and both of the parties will undoubtedly find it more difficult than it has been in the past with regard to maintaining financial stability and equilibrium.
The precipitating fault factor would appear to lie at the door of the defendant even though the relationship may have lost some of its warmth and intimacy over the years.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony and §46b-84 as concerns support.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof, and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
From Robinson v. Robinson, 187 Conn. 70 (May 1982) the court notes the following:
CT Page 4756 "Because an action for dissolution of marriage is a creature of statute, it is sometimes assumed that the statute not only creates the grounds for relief but also circumscribes the remedy. Although created by statute, a dissolution action is essentially equitable in nature. Pasquariello v. Pasquariello, 168 Conn. 579 (1975). `The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' General Statutes § 46b-81 sets forth certain criteria for the court to consider in making an assignment of property. . . . While alimony, in whatever form, or an assignment of property is not to be considered either as a reward for virtue or as a punishment for wrongdoing, a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for his or her misconduct. Moreover, in considering the gravity of such misconduct it is entirely proper for the court to assess the impact of the errant spouse's conduct on the other spouse.
 The Court enters the following orders.
There shall be joint custody of the minor child Meghan with the plaintiff mother being the primary custodial parent.
The defendant father shall have reasonable rights of visitation mindful of the young lady's age of 17.
The defendant shall pay child support to the plaintiff for the minor daughter in the amount of $112.00 weekly until the child graduates from high school in June of 2001.
The plaintiff shall maintain health insurance coverage for the minor child with the premium costs to be equally apportioned between the plaintiff and defendant, all unreimbursed medical costs to be shared equally between the parties.
The defendant shall continue in full force and effect his existing $40,000.00 life insurance policy provided by his employer keeping the daughter Meghan as beneficiary for such interval of time as the defendant is obligated to pay support for the child.
The Court enters no order as to periodic alimony as to either party. CT Page 4757
The Court is mindful of the defendant's request for alimony from the plaintiff in the amount of $100.00 per week for eleven years but feels in good conscience that it cannot entertain the request.
The plaintiff and the defendant may each retain their respective retirement accounts and deferred compensation accounts. The defendant may retain his Traveler's annuity and his State of Connecticut Teacher's Retirement Account.
The plaintiff may retain her State of Connecticut Retirement account.
The defendant shall transfer and set over to the plaintiff all of his right, title and interest in and to the real estate known as 45 Baltic Road, Franklin and the plaintiff shall assume and agree to pay the existing mortgage thereon and hold the defendant harmless therefrom. The plaintiff shall assume and pay the entire remaining loan balance due her parents in the approximate amount of $7,100.00 and the CHIF loan and hold the defendant harmless therefrom.
By virtue of the transfer the defendant shall receive the sum of $18,000.00 payable on the first of the following occurrences:
a. The plaintiff's sale of the property at 45 Baltic Road.
b. September 2, 2001.
The defendant shall be entitled to peacefully remove all of his personal goods or effects or belongings from the residence or the garage thereon within 30 days. This includes all body shop tools, air compressor, table saw, radial arm saw, Skil saw, bench grinder, wood stove, incubator, Troy built tiller, beekeeping equipment, teacher professional material, file cabinets in playhouse, professional books re: child literature, a green tent and the defendant's mother's Christmas ornaments.
The plaintiff and the defendant shall share equally the obligation to liquidate the following credit card debt, Visa, Citibank, AAA and CSEU either by making the payments of the minimum due thereon or such other sums as may be required.
The marriage of the parties is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried. CT Page 4758
Austin, J.